## COMMONWEALTH *vs.* IRA TEMPLE.

A franchise to construct, maintain and use a horse railroad over a highway, authorizes the grantees to drive their cars upon their track at the rate of speed usual for vehicles drawn by horses for the carriage of passengers, so far as this right can be enjoyed with-out preventing other vehicles on the highway from moving at their usual rate of speed.

The driver of a heavily loaded wagon on a highway, having one wheel in the track of a horse railroad established by authority of the legislature, and moving at the usual rate of speed of such wagons, but at a slower rate than horse railroad cars usually move, is bound to turn off from the track at the request of the conductor of a car owned by the proprietors of the railroad, if there is room to do so, although it is usual and much easier to drive such wagons with one wheel upon the railroad track. And if, by not so turning off for several hundred feet, he obstructs the passage of the car at its usual rate of speed, he is liable to indictment under a statute prohibiting the wilful and ma-licious obstruction of the railroad, even if he did not enter upon the track with the intention of obstructing the cars, and continued thereon without intending to obstruct them, and merely for his own convenience.

INDICTMENT on § 5 of the *St.* of 1856, *c.* 302, by which the Malden and Melrose Railroad Company were made a corpora-

tion, and authorized to construct, maintain and use with horse power only, a railway over such streets and highways of the towns of Melrose and Malden and the city of Charlestown, and at such distances from the sidewalks, as the selectmen of those towns and the mayor and aldermen of said city should by their order fixing the route of said railroad determine, and also on such other land in those towns and city as the corporation should elect, to some convenient point of intersection in Charlestown, to be fixed by the city council, with the railroad of the Middlesex Railroad Company ; and to enter upon and use the track of that company in such mode and upon such rates of compensation as should be agreed upon, or, in case of disagreement, determined by commissioners appointed by this court. The fifth section of the act is as follows :

" If any person shall wilfully and maliciously obstruct said corporation in the use of said road or tracks, or passing of the cars or carriages of said corporation thereon, such person, and all who shall be aiding or abetting therein, shall be punished by a fine not exceeding five hundred dollars, or may be imprisoned in the common jail for a period not exceeding six months."

A trial was had in the court of common pleas in Middlesex, at February term 1859, before *Bishop*, J., who signed this bill of exceptions :

" It appeared, from the evidence on the part of the Common-wealth, that the defendant was driving his heavily loaded wagon from Charlestown to Boston, in a public street, with one wheel in the track of the Middlesex Railroad, when one of the cars of the Malden and Melrose Railroad Company came up behind him. The defendant's team was moving at the usual rate for teams of that class, but at a less rate of speed than the horse cars were in the habit of moving. There was room outside the track for either vehicle to pass the other. When the cars came up, the conductor asked the defendant if he would please to remove his team from the track. The defendant did not, but continued upon it at the same rate of speed several hundred feet, and then turned off. It also appeared from the same testi-mony that it was usual for those in charge of vehicles like that

of the defendant, to drive them with one wheel in the track; and that they could be drawn much more easily in that place than in any other part of the street. There was no evidence that the defendant got upon the track in the first instance with the intention of obstructing the cars, or that he changed his rate of speed on the approach of the cars, or that he used the street or did any act in any other than the usual manner. There was no other evidence than this, bearing upon the question of malice. As bearing upon the question of intention, the defendant offered to show that it is not the custom for those in charge of vehicles to turn out, when a car comes up behind them, until it suits their convenience. The evidence was objected to, and ruled out.

" The defendant contended that malice must be shown, and that it could not be inferred from the mere fact that the defendant used a part of the street, the most convenient to him, in the ordinary way, knowing that the car would be obstructed by such use.

" The defendant also prayed for the following instructions :

" 1st. If the jury find that the defendant was using the highway in the ordinary way, they must find for the defendant, without reference to the motive of his act.

" 2d. In the absence of regulations on the subject, the corporation has no right to drive its cars at any particular rate of speed, and the mere slackening of the speed of the car by the defendant, if he was moving at the ordinary and proper rate of speed, was no obstruction, within the meaning of the statute.

" 3d. There is not sufficient evidence to warrant the jury to find a verdict of guilty.

" 4th. The right of the horse railroad company to use the highways is subject to the right of the public to use such highways as they had previously done.

" 5th. If the jury find that the defendant went upon the track in the ordinary use of the street, without intending to obstruct the car, and continued on the track, after the car came up behind him, for his own convenience, and because that was the best part of the street to drive on, the defendant is not guilty.

" 6th. In order to establish the crime of obstructing the cars, some act must be shown besides the use of the street in the ordinary way.

" 7th. The act incorporating the railroad company created no new crime ; it merely attached a new penalty.

" 8th. In the absence of regulations as to the rate of speed and the mode of use of the track, they have no right to any given rate of speed.

" The court declined to give any of the instructions as prayed for ; but did instruct the jury that, although the public might drive their vehicles over the tracks of the railroad when the cars were not approaching, the corporation had a prior right to the track ; and if the jury should find that the defendant was on the track, and hindered the progress of the car, and was requested to remove from it, and could reasonably have removed, he was bound so to do ; and his remaining there, knowing that the car would be thereby obstructed, intending thereby to obstruct it, in the use of the track, was a wilful and malicious obstructing, within the meaning of the statute ; that it was not material whether the defendant stopped his vehicle, or whether it continued to move on the track at the ordinary rate for such vehicles ; that no other proof of malice was necessary than that the defendant knowingly and intentionally obstructed the car, although he may have made only the ordinary use of the street.

" To all of these rulings and instructions and refusals to instruct the defendant excepts."

*P. W. Chandler & G. O. Shattuck,* for the defendant. 1. The instructions given to the jury assumed that if a party intentionally obstructs the railroad corporation in the use of their track, although it is but for an instant, and for the convenience of the party obstructing, and without any ill will or desire in any way to injure, he is guilty of the crime of wilfully and maliciously obstructing the corporation. The court erred in the instructions given, and in refusing the fifth instruction prayed for. The defendant and the corporation have equal rights in the highway. Each, in the proper enjoyment of his own rights, may incidentally and intentionally obstruct the other, but there is no

criminality under the statute, until the element of ill will, of malice, enters into the case. If this is not the meaning of the statute, the word " maliciously " adds nothing to the clause of the statute in question. The limit cannot be safely established elsewhere. *Commonwealth* v. *Walden*, 3 Cush. 558. 4 Bl. Com. 244. 2 Bishop on Crim. Law, § 837. 2 Russell on Crimes, (7th Amer. ed.) 544. *Bromage* v. *Prosser*, 4 B. & C. 247. *People* v. *Smith*, 5 Cow. 258.

2. The instruction "that the corporation had a prior right to the track" was incorrect. There is no language in the charter of the corporation, from which such a right can be inferred. If they have such prior right, then every vehicle, whatever burden it may carry, and whatever the difficulties may be in removing from the track, is obliged at once, on the approach of a car, to remove from the track; and the driver of an empty car, which can without serious difficulty be turned off the track, can insist that a vehicle loaded with twenty tons shall turn out for this car.

If the car has the prior right, the question whether the obstruction is reasonable is simply whether it is necessary. No convenience can justify the violation of another's right. Although a party's vehicle will be strained or broken by a removal from the track, he must move at once on the approach of a car; for he should not have put himself in a position to interfere with the enjoyment by the corporation of its prior rights.

The relations of parties in the highway are similar to those of tenants in common. Much inconvenience may be caused, for which the law has made no provision.

The inconvenience is caused by the fact that the cars are so constructed that they cannot turn out with facility. The inconvenience is incident to such construction. No law exempts them from the rule requiring vehicles to turn to the right. Towns may regulate the mode of use; but in the absence of regulations, there is nothing to show that they are not subject to the general rule.

The second and third instructions prayed for should have been given.

*S. H. Phillips*, (Attorney General,) for the Commonwealth.

This case was decided in June 1860.

Shaw, C. J. Since horse railroads are becoming frequent in and about Boston, and are likely to become common in other parts of the Commonwealth, it s very important that the rights and duties of all persons in the community, having any relations with them, should be distinctly known and understood, in order to accomplish all the benefits, and, as far as practicable, avoid the inconveniences, arising from their use. This is important to proprietors and grantees of the franchise, who expend their capital in providing a public accommodation, on the faith of enjoying, with reasonable certainty, the compensation in tolls and fares, which the law assures to them; to all mayors, aldermen, selectmen, commissioners or surveyors specially appointed by law for the care and superintendence of streets and highways; to all persons, for whose accommodation in the carriage of their persons and property these ways are especially designed; and to all persons, having occasion to use the ways through or across which these horse railroad cars may have occasion to pass. These railroads being of recent origin, few cases have arisen to require judicial consideration, and no series of adjudicated cases can be resorted to, as precedents, to solve the various new questions to which they may give rise.

But it is the great merit of the common law, that it is founded upon a comparatively few broad, general principles of justice, fitness and expediency, the correctness of which is generally acknowledged, and which at first are few and simple; but which, carried out in their practical details, and adapted to extremely complicated cases of fact, give rise to many and often perplexing questions; yet these original principles remain fixed, and are generally comprehensive enough to adapt themselves to new institutions and conditions of society, new modes of commerce, new usages and practices, as the progress of society in the advancement of civilization may require.

In the first place, all public easements, all accommodations intended for the common and general benefit, whatever may be their nature and character, are under the control and regulation of the legislature, exercising the sovereign power of the State

either by general law or special enactment. It may be done by a charter or special act of incorporation, as in case of a bridge over broad navigable waters; or, where the necessity for its exercise is of frequent recurrence, it may be by the delegation of power to special tribunals, or municipal governments, by general laws.

Again; where the entire public, each according to his own exigencies, has a right to the use of the highway, in the absence of any special regulation by law, the right of each is equal; but as two or more cannot occupy the same place at the same time with their persons, their horses, carriages and teams, or other things necessary to this use, each is bound to a reasonable exercise of his absolute right, in subordination to a like reasonable use of all others, and not to incumber it over a larger space, or for a longer time, to the damage of any other, than is reasonably necessary to the beneficial enjoyment of his own right. If an adjacent proprietor has occasion to stop at his own gate with a carriage or team, if he has occasion to deliver wood, coal or other necessaries, or, if he is a trader, to deliver or receive merchandise, he must place his team or carriage, for the time being, in such a manner as to obstruct the way for the use of others as little as is reasonably practicable, and remove the obstruction within a reasonable time, to be determined by all the circumstances of the case.

So in the actual use of the highway. Each may use it to his own best advantage, but with a just regard to the like right of others. Persons in light carriages, for the conveyance of persons only, have occasion, and of course a right, when not expressly limited by law, to travel at a high rate of speed, so that they do not endanger others. But all foot passengers, including aged persons, women and children, have an equal right to cross the streets; and all drivers of teams and carriages are bound to respect their rights, and regulate their own speed and movements in such a manner as not to violate the rights of such passengers. So in regard to the drivers of fast and slow carriages, each must respect the rights of the other. Take a single illustration; if a heavily loaded ox team be passing along a street wide enough

only for one carriage, say fourteen feet, and other fast carriages follow, these last must, for the time being, be restrained in their speed, because this necessarily results from these circumstances — the narrowness of the way, and the ordinary slowness of the ox team ahead. If parties thus travelling in the same direction should come to a portion of the way wide enough for carriages to pass each other, say twenty feet wide, it is obvious that if the driver of the heavy team would turn to either side, it would give the fast team room to pass, whereas, if he should keep the middle, the five or six feet on either side would not permit any carriage to pass. Now, supposing no impediment should intervene, and no circumstance should render it dangerous for the driver of the slow team to bear off, in our opinion it would be his duty to do so, although it might suit his convenience better to keep in the middle ; and his refusal thus to bear off would be an abuse of his own equal and common right, for which, if injurious to another, an action would lie ; and if it was a public highway, the party would subject himself to a public prosecution.

In some few cases, the regulation of the use of the highway is important enough to require a rule of positive law, requiring each traveller, when meeting, to turn to the right of the centre ; in some states, to the left. But the circumstances under which travellers may be placed in relation to each other are so various, that it would be impracticable to prescribe any positive rule approaching nearer to certainty than the rule of the common law, that each shall reasonably use his own right in subordination to the like reasonable use of all others.

With this view of the law regulating the use of public ways, we will examine the present case, as it appears on the exceptions.

We understand that a horse railroad and cars are a modern invention, designed for the carriage of passengers, and, though not moving with the speed of steam cars, yet with the average speed of coaches, omnibuses and all carriages designed for the conveyance of persons.

The accommodation of travellers, of all who have occasion to use them, at certain rates of fare, is the leading object and public benefit, for which these special modes of using the high-

Commonwealth *v.* Temple.

way are granted, and not the profit of the proprietors. The
profit to the proprietors is a mere mode of compensating them
for their outlay of capital in providing and keeping up this
public easement.

A franchise for the railroad, which the defendant was accused
of obstructing, had been duly granted to the proprietors, which
grant included the right to lay down tracks on a public highway,
and also to use and maintain horse cars thereon for the carriage
of passengers.

Every grant, by an obvious and familiar rule of law, carries
with it all incidental rights and powers necessary to the full use
and beneficial enjoyment of the grant; and where such grant
has for its object the procurement of an easement for the public,
the incidental powers must be so construed as most effectually
to secure to the public the full enjoyment of such easement.

It appears that the proprietors of the horse railroad, having
received a franchise, had laid down a railway track, and had
procured horse cars, with suitable conductors, and were in the
actual use of the track. The defendant, with a heavily loaded
team — it does not appear whether an ox team or a horse team
— was on the public street, driving from Charlestown to Boston,
with one of his wheels on the railroad track, when the cars came
up behind him. The defendant's team was moving at the
usual rate for teams of that class, but at a less rate of speed
than the cars were in the habit of moving. There was room
outside the track for either vehicle to pass the other. When the
cars came up, the conductor asked the defendant if he would
remove his team from the track; he did not, but continued upon
it, at the same rate of speed, several hundred feet, and then
turned off.

Several things are here to be observed. The cars could only
pass on one precise line. The wagon could deviate to the right
or to the left, within the limits of the travelled part of the road.
The public, by the grant of the franchise, had granted the right
to move on that precise line, and had given to all passengers the
right to be carried on that line at the usual rate of speed at
which passengers are carried by horses, subject only to occa-

7 *

sional necessary impediments. The cars cannot so move, and the passengers cannot be so carried, whilst the wagon moves on the track. No impediment is shown to prevent the wagon from turning out. The wagon therefore was for the time being an unnecessary obstruction of the public travel, and therefore unlawful.

It is stated among the above mentioned circumstances in the bill of exceptions, as if the two vehicles were upon an equality in this respect, that there was room on either side for either vehicle to turn out. But this is mere illusion ; the wagon could turn out, the cars could not ; *ad impossibilia lex non cogit.*

It is said, above, that it was usual for those in charge of heavy and slow teams, to drive them with one wheel on the track, and that they could be drawn much more easily in that place than in any other part of the street. This is no justification. Whilst the track was not required for the cars, perhaps the teamster had a right so to use it. But when required for the cars, which could pass in no other mode, he had no legal right to consult his own convenience, to the great inconvenience, the actual injury, of the equal rights of another.

It is no excuse that the defendant did not get upon the track in the first instance with the intention of obstructing the passage of the cars, or that he did not slacken his rate of speed on their approach ; it is a nuisance, if, for his own benefit, he violates the rights of others ; and if this consists in the violation of a public right, indictment is the appropriate remedy for its vindication and redress. Nor is express malice, a disposition or desire to cause damage to another, as in case of malicious mischief, necessary to the completion of the offence. It is a nuisance if one wilfully seeks and pursues his own private advantage regardless of the rights of others, and in plain violation of them ; it is a wrong done. And as every man must be presumed to intend all the necessary, natural and ordinary consequences of his own acts, it is a wilful and intended wrong ; it is malice — a thing done *malo animo* — in the sense of the law; and no other malice need be proved, to show the act to be a nuisance.

If it be said that the obstruction in this case was very slight

Commonwealth *v.* Temple.

that the cars were delayed but a very short time; the answer is that this is very true, and the injury may be trifling in itself; but vindicated and justified, as it is in the argument, on the ground of right, it tests a principle of very great importance. If the driver of a heavily loaded truck or wagon may, for his personal convenience, use one rail of the track wilfully for a few hundred feet, others may use the other rail for the like purpose, and for any distance which suits their convenience. Cars which, at the ordinary speed of horses in carriages, would pass a given space in one hour, may be three or four in accomplishing it. Passengers whose business requires them to be at the place of destination at a fixed time, and who expect, and have a right to expect, that it will be reached in that time, may find their business greatly deranged. Men who, relying on the establishment of horse cars for their daily passage, have fixed their domicil in one place and their ordinary place of business in another, may find their plans of life thus defeated. Indeed — without pursuing the effect of the right contended for into all its consequences — the establishment of such a principle might essentially impair the value of real estate in many situations.

We will now consider some of the points specially raised by the bill of exceptions.

1st. The defendant contended that malice must be shown, and that it could not be inferred from the mere fact that the defendant used a part of the street, the most convenient to him, in the ordinary way, knowing that the car would be obstructed by such use.

If the term malice is here used in the sense of ill will, a desire to injure another, as an actuating motive, the opinion of the court is, that malice need not be shown, but that if a wilful intent to follow his own convenience, in violation of the equal rights of others, exists, it is sufficient, and no other malicious motive need be proved.

2d. The defendant contended that, in the absence of regulations on the subject, the corporation has no right to drive its cars at any particular rate of speed, and the mere slackening of the speed of the car by the defendant, if he was moving at the

ordinary and proper rate of speed, was no obstruction within the meaning of the statute.

This position, we think, is untenable. We think the corporation had a right, and, in reference to passengers, were bound, to move at the rate of speed usual for vehicles for the carriage of passengers, drawn by horses, provided this right could be enjoyed without preventing the loaded team from moving at its usual and proper speed; and both could be done by the team ahead turning off the track, which the car in the rear could not do. It was therefore the duty of the team, in the reasonable use of the public right, to do it. What was the usual and proper rate of speed of the one was not that of the other.

3d. The evidence was properly left to the jury.

4th. It was contended that the right of the horse railroad company to use the highways is subject to the right of the public to use such highways as they had previously done.

This position we think manifestly unsound. The legislature having granted a new and peculiar use of the highways, the right of the public to use them as they had done is thereby qualified, and must be adapted to such new use. Suppose the legislature should authorize a canal to cross a highway, with a draw, to be raised whilst boats are passing; the public cannot use the highway as they had previously done, at all times, but must use it in subordination to the new right granted. So here, the law having authorized a horse railroad, which cannot deviate from one line, other vehicles must conform their use of the way to such new and authorized use, although it prevents them, to some extent, from using it as they had previously done.

The 5th, 6th, 7th and 8th prayers for instructions, we think, were rightly rejected, for reasons which are already sufficiently stated.

The instructions actually given were, in our opinion, correct in law, carefully guarded, and precisely adapted to the circumstances of the case, and therefore the exceptions must be over-ruled, and *Judgment entered on the verdict.*