LIVINGSTON, Circuit Judge,
concurring in part and concurring in the judgment:
I concur in the judgment and join in Part II, which determines both that the affidavit here was not so lacking in indicia of probable cause as to make reliance upon it unreasonable and that there is no basis in the record for concluding that Agent Lyons knowingly or recklessly misled the district court by omitting or misstating information in his search warrant affidavit. I agree fully with Part II’s conclusion that the officers acted in “objectively reasonable” reliance on the search warrant, thus rendering the exclusionary rule inapplicable. See United States v. Leon, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As to Part I, however, I do not join in my colleagues’ determination that there was no substantial basis for the district court’s finding of probable cause. In my view, this is not a question that need be decided, given that the good faith determination is dispositive. The majority’s analysis of the issue, moreover, is troublesome in several respects.
The majority characterizes the “threshold issue” in this case to be whether there was a substantial basis for the district court’s finding of probable cause based on two factors alone: (1) that the search warrant affidavit alleged that Falso “ ‘appeared’ to ‘have gained or attempted to gain’ ” access to a website, cpfreedom.com, that distributed child pornography; and (2) that he was convicted of a misdemeanor eighteen years ago in connection with the sexual abuse of a seven-year-old girl. Concluding that the search warrant affidavit failed to allege that Falso in fact accessed the website at issue, the majority poses the ultimate question to be whether Falso’s prior conviction alone “provide[d] a sufficient basis to believe that evidence of child pornography crimes would be found in Falso’s home.” Op. at 113. The majority not surprisingly answers this question in the negative. With respect, however, I believe the majority sidesteps discussion of the actual facts alleged in the affidavit and thus mischaracterizes both the threshold and ultimate issues involved. In so doing, the majority fails to read the affidavit in its totality and in the commonsense manner the Supreme Court prescribes. See Illinois v. Gates, 462 U.S. 213, 231-32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
The investigation in this case began when FBI agents obtained the IP address of the website cpfreedom.com, which contained approximately eleven images of child pornography. The website advertised additional child pornography that was available upon purchase of a membership. An undercover FBI agent signed up for a one-month membership for $99 and subsequently received an email that provided him with the Internet address of the *130 restricted site, a user name, and a password. Forensic examination of the website hosting cpfreedom.com revealed “several hundred possible subscribers along with e-mail addresses and other information.” This examination further revealed “that the material associated with the www.cpfreedom.com website is hardcore child pornography.”
According to the search warrant affidavit, “subpoenas were served on appropriate [Internet service providers] for each email address identified on the www. cpfreedom.com website.” One of these email addresses, cousyl731@yahoo.com, belonged to Falso, who maintained an active Yahoo! account during the time period relevant to the investigation. Records obtained from Time Warner Cable established the likelihood that Falso maintained a computer at his residence, since Road Runner Internet service had been established there.
Additional investigation revealed that Falso was arrested in 1987 for sexually abusing a seven-year-old girl. Significantly, the victim informed the New York State Police that she referred to the appellant, David J. Falso, as “Cousey.” The affidavit also alleged that Falso admitted to the police at the time of his arrest that he “may have latent problems and that he might require some type of counseling.” Falso eventually pled guilty to a misdemeanor in state court.
The search of Falso’s home pursuant to warrant uncovered over 600 printed-out images of child pornography, many bearing website information in the bottom margins. At least 50 of these images depicted pre-pubescent children engaging in explicit sexual poses and sexual conduct, including intercourse with adults. Falso’s computer contained numerous additional images of child pornography, along with videotaped scenes depicting very young children engaged in sexual acts.[1] Inside a box in Falso’s bedroom, law enforcement agents found at least eight photographs constituting child pornography, one of which depicted a girl performing a sex act on Falso. During the search, Falso made statements admitting that he had intentionally sought out and obtained child pornography from the Internet and that he had belonged to a site where he obtained child pornography for a fee for about a month. He also stated that he is attracted to young girls and that he traveled to Thailand and other countries to have sex with minors.
The majority errs in two principal ways in reading the search warrant affidavit. First, focusing solely on what it terms the affidavit’s “inconclusive” allegation, Op. 121, that “a person with the e-mail address of cousyl731@yahoo.com either gained access or attempted to gain access to the website www.cpfreedom.com,” the majority ignores the underlying facts that support this allegation — namely, that Falso’s email address, in addition to the email addresses of several hundred others, was found on the site, and that the website used email to correspond with its members. The dissent makes a similar mistake — disregarding the presence of Falso’s email address on the website to affirm, erroneously, that Lyons’s affidavit “establishes no more than that Falso ... clicked on a website containing child pornography, and may have attempted to view it.” Dissent Op. 136.
With respect, a person’s email address does not appear on a website because that person has “clicked” on it any more than his mailing address becomes known to the library simply because he’s walked in and browsed the stacks. Falso admits as much *131 in his brief before this Court, acknowledging that an individual does not provide his email address to a website simply by visiting it.
Admittedly, Lyons’s affidavit is not a model of careful drafting. At oral argument the government revealed that it had failed to include information in the affidavit that would have made the substantial-basis determination easier: specifically, that Falso’s email address (along with those of the other individuals) appeared with a corresponding username and password of the type the undercover FBI agent received when he purchased a membership. Nevertheless, the fact that Fal-so’s email address was found on a website containing eleven free images of hardcore child pornography and offering more, for a fee, is probative evidence that Falso visited that website and either signed up or attempted to sign up for a membership. Granted, this evidence is not conclusive. Falso argues that his email could have been on the cpfreedom.com site because “the website intended to send [him] an unsolicited e-mail known as ‘spam,’ ” or because it was otherwise taken from a marketing list. As we have repeatedly said, however, “[t]he fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause” or the significance of evidence tending to establish it. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir.2006) (quoting United States v. Fama, 758 F.2d 834, 838 (2d Cir.1985)). And “evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material.” United States v. Wagers, 452 F.3d 534, 540 (6th Cir.2006).
The majority similarly errs in taking the district court to task for giving weight to Falso’s prior conviction. The majority chides the district court for its “fallacious inference,” supposedly nowhere supported in the affidavit, that people who sexually abuse children are more likely than others in the general population to collect child pornography. Op. 122-23. The affidavit clearly states, however, that “individuals who exploit children” use computers to “locate, view, download, collect and organize images of child pornography found through the Internet.” Moreover, the district court’s inference of a connection is one that we, too — citing a congressional finding — have in the past seen fit to draw. See United States v. Brand, 467 F.3d 179, 198 (2d Cir.2006) (noting that “possession of child pornography ... shares a connection ... with pedophilia,” and endorsing Congress’s finding that “child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children” (quoting Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996))).[2] Our sister Circuits have act *132 ed similarly. See, e.g., United States v. Lebovitz, 401 F.3d 1263, 1271 (11th Cir.2005) (“Law enforcement investigations have verified that pedophiles almost always collect child pornography or child erotica.” (emphasis added) (quoting S.Rep. No. 104-358, 104th Cong., 2d Sess., at 12-13 (1996))); United States v. Byrd, 31 F.3d 1329, 1339 (5th Cir.1994) (“[C]ommon sense would indicate that a person who is sexually interested in children is likely to also be inclined, i.e., predisposed, to order and receive child pornography.”); see also Osborne v. Ohio, 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (observing that “evidence suggests that pedophiles use child pornography to seduce other children into sexual activity” (emphasis added)).
It does make a difference that Falso’s conviction occurred eighteen years earlier, though perhaps less of a difference than the majority makes out. The Supreme Court has noted empirical research on child molestation that suggests that most reoffending after a prison sentence does not occur within the first several years, but may occur as long as twenty years following release. Smith v. Doe, 538 U.S. 84, 104, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003). This Court, moreover, has noted that the staleness inquiry in child pornography cases is unique, due to the tendency of persons interested in such material to hoard it, see United States v. Irving, 452 F.3d 110, 125 (2d Cir.2006), a fact clearly referenced in the search warrant affidavit in this case. Given the evidence we cited in Brand that child pornography is often used by pedophiles and child sexual abusers to stimulate themselves and to entice young victims, see Brand, 467 F.3d at 198, “a person of reasonable caution would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause.” Wagers, 452 F.3d at 541 (internal quotation marks omitted). Because the issue is complex and unnecessary to the resolution of this case, I would not opine, as the majority freely does, that the lapse of time since Falso’s conviction rendered it “marginally relevant, if at all.” Op. 123.
In sum, I concur in the judgment and join in Part II. As to Part I, this Court has said that even when the probable cause question is close, “we need not resolve the issue [if] we conclude that the good faith exception applies.” United States v. Can-celmo, 64 F.3d 804, 807 (2d Cir.1995). I fear the majority’s analysis is more likely to cloud than clarify understanding of Fourth Amendment issues in the difficult and rapidly evolving context of Internet searches. Finding it unnecessary to reach the issues addressed by the majority in Part I, I respectfully decline to do so.

. At least four of the children who suffered the depicted abuse have been identified.

. The majority dismisses Brand as inapposite because the correlation on which the government relied in that case — that collectors of child pornography are more likely to abuse children, see Brand, 467 F.3d at 197-99 (permitting use of defendant’s possession of child pornography to prove defendant's intent to abuse a minor) — is the inverse of the one on which the government relied here — that those who abuse children are more likely to collect child pornography. Slip Op. 123-24 n. 18. Regardless of whether the facts of Brand are analogous to the facts of this case, what matters here is that we cited with approval the congressional finding that "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites.” Id. at 198 (emphasis added) (quoting Pub.L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996)). Such a finding indicates that pedophiles and child sexual abusers are more likely than others in the general population to possess child pornography — precisely the reasoning relied on by the *132 district court to give weight to the prior conviction in its probable cause calculus.