NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 13a1026n.06

No. 13-1061

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Dec 11, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TIMOTHY L. CURRY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: MERRITT, SUTTON and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. Timothy Curry pleaded guilty to one count of wire fraud. *See* 18 U.S.C. § 1343. The district court sentenced him to a within-guidelines 41-month prison term and ordered him to pay $696,665 in restitution. On appeal Curry challenges the amount of the district court's restitution award. But he faces a preliminary hurdle—he must show that his voluntary waiver of "*any* right" to appeal his sentence permits this appeal. Because he cannot clear this hurdle, we must dismiss the appeal.

I.

From 2006 until 2012, Curry ran several companies that he claimed could secure loans for individuals who otherwise could not obtain financing. Curry's financing magic came at a price: He required clients to pay a deposit ranging from $2,750 to $25,500 before he would do

any work. After his clients paid the fees, they learned that the only trick Curry could perform was to disappear. Once he received a client's fee, Curry cut off communications, failed to complete the work necessary to secure the client's loan and refused to refund the deposits. He put the advance fees to his own uses, including at restaurants, retail stores, gyms, dating websites and casinos.

Once discovered, Curry's shenanigans prompted a three-count indictment for wire fraud. Rather than proceed to trial, Curry pleaded guilty to one of the three wire fraud charges. In the plea agreement, Curry and the government settled on a guidelines range of 41 to 51 months for Curry's sentence based on a loss to his victims between $400,000 and $1,000,000. They also acknowledged that, as part of Curry's sentence, the district court would order restitution. They left open the "specific loss amount, for purposes of restitution," noting that the restitution figure "[would] be determined by the Court at the sentencing hearing." R. 26 at 4. Curry agreed that, if his sentence "f[ell] within the guideline range recommended" in the plea agreement (41 to 51 months), he waived "*any* right to appeal his conviction or sentence." *Id.* at 7 (emphasis added).

Based on victim declarations and spreadsheets showing deposits into two bank accounts associated with Curry's fraudulent financing operations, Curry's presentence report concluded that he owed $696,665 in restitution to the victims of his fraud. Curry objected to the restitution calculations in his pre-sentence memorandum and a supplemental memorandum. By and large, Curry disputed the restitution amount for one reason: He claimed a right to retain some clients' advance fees because their conduct, not Curry's, caused their loan applications to fail. Curry did not produce an affidavit or any other evidence to support this argument. Nor did he request a hearing on the restitution issue.

2

At Curry's sentencing hearing, the judge acknowledged Curry's objection to the restitution calculations, but indicated that he was "not prepared to overrule a probation officer as to the restitution amount [based] on [Curry's] Supplemental Sentenc[ing] Memorandum." R. 43 at 5. He clarified, though, that he "would be pleased to hear after we reduce this case to judgment . . . some evidence under oath and corroborated as to why the restitution amount should be lower than $696,665." *Id.* He also told Curry that he would entertain arguments about the probation officer's restitution calculations during the hearing. Curry declined the invitation to offer additional arguments regarding restitution. And although the district court withheld final judgment on Curry's sentence for a month, Curry never produced evidence to support his alternative restitution figure.

The district court entered judgment sentencing Curry to 41 months in prison and ordering him to pay $695,665 in restitution. Curry timely appealed the restitution order.

## II.

Curry directs most of his arguments to the impropriety of the district court's restitution order. But that merits question is neither here nor there if Curry waived his right to appeal. We begin—and end—by addressing the waiver contained in his plea agreement.

A defendant may waive any right, even a constitutional one, in a plea agreement, so long as he knowingly and voluntarily relinquishes the right. *United States v. Gibney*, 519 F.3d 301, 305–06 (6th Cir. 2008); *see also United States v. Bradley*, 400 F.3d 459, 463–66 (6th Cir. 2005). Curry does not deny that he knowingly and voluntarily signed the plea agreement. The only question, then, is whether the appellate waiver covers the restitution component of his sentence. In interpreting the plea agreement, we think of it as a contract, amenable to traditional tools of contract interpretation. *See United States v. Freeman*, 640 F.3d 180, 194 (6th Cir. 2011).

The relevant text of the plea agreement is not complicated. It says: "If the sentence imposed falls within the guideline range recommended by [Curry] in Paragraph 2B above [(i.e., if he receives a prison term between 41 and 51 months)], [Curry] waives any right to appeal his conviction or sentence." R. 26 at 7. Section 3 of Curry's plea agreement lists restitution as one of the compulsory components of Curry's sentence. When the district court sentenced Curry to 41 months in prison—namely, "within the guideline range recommended" by Curry and the government—the waiver thus extinguished Curry's right to appeal any part of his sentence, including the restitution order.

Precedent confirms this straightforward reading of the agreement. *Gibney*, for example, offers a close parallel. 519 F.3d at 305–06. Gibney's plea agreement specified that he "voluntarily waive[d] the right . . . to directly appeal his conviction and the resulting sentence" so long as the court sentenced him to a prison term "within the applicable Guideline Range." *Id.* at 306. The district court sentenced Gibney to the mandatory minimum, which fell within the guideline range. *Id.* On appeal, we held that Gibney's plea agreement barred review of the district court's restitution award "[b]ecause restitution is a part of one's sentence . . . and because the plea agreement contemplated a waiver of the right to appeal Gibney's criminal sentence." *Id.* Other cases have reached similar conclusions in similar circumstances. *See United States v. Reese*, 509 F. App'x 494, 498–99 (6th Cir. 2012); *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006).

Curry tries to distinguish *Gibney* on the ground that his plea agreement, unlike Gibney's, noted that the parties disputed the amount of restitution due and deferred resolution of that issue to the district court. His factual premise is correct; his legal conclusion is not. Curry's plea agreement indeed stated that the "amount and allocation" of restitution would "be determined by

the Court at sentencing based upon the information submitted by the parties (and victims) prior to sentencing." R. 26 at 6. But the conclusion Curry draws from this fact—that his reservation of the right to challenge restitution in *the district court* necessarily included a reservation of the right to *appeal* the district court's restitution order—does not follow. If anything, this factual distinction further undermines Curry's case. By reserving the right to challenge the amount of restitution in the district court, Curry recognized that restitution would be part of his sentence, that the amount of restitution would be disputed and that he could have reserved (but did not reserve) the right to challenge the restitution order before the appellate court. The express reservation of a right to challenge restitution before the district court coupled with the failure to reserve the right to appeal that determination confirms that exclusion of the latter was a deliberate choice. *Cf. Bates v. United States*, 522 U.S. 23, 29–30 (1997) (including particular language in one section while omitting it from another provides evidence that the exclusion was intentional).

As we have recognized before, "The right to raise an issue before the district court has value . . . even if it is not accompanied by a right to appeal." *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004). Curry complains that this is untrue here because the district court did not provide him with a separate hearing on the restitution issue. But the district court had no obligation to do so. *See* 18 U.S.C. § 3664(d)(4) (noting that a court "*may* require additional documentation or hear testimony" when ordering restitution) (emphasis added); *United States v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000) (same). And it certainly had no such obligation when Curry not only never requested a separate hearing, but also declined the district court's invitation to argue restitution at sentencing or to present additional evidence after sentencing to support his claim. Curry may not leverage a failure to litigate the restitution issue in district

court (a right he reserved in the plea agreement) into a right to appeal that issue (a right he bargained away).

III.

For these reasons, we dismiss Curry's appeal.