RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 0301

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-2287

MICHAEL DEMETRUS GRUNDY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cr-20153—Denise Page Hood, Chief District Judge.

Decided and Filed: December 22, 2016

Before: SILER, BATCHELDER, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Amy Lee Copeland, ROUSE + COPELAND LLC, Savannah, Georgia, for Appellant. Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. In exchange for the government's promise to dismiss the bulk of criminal charges against him, defendant Michael Grundy agreed to plead guilty to a single count of honest services wire fraud and to waive his right to appeal his conviction and sentence. After the district court ordered a restitution amount with which he disagreed, Grundy appealed. He insists that his appeal waiver does not preclude challenges to the restitution order. After

applying the terms of his plea agreement and our precedent, we disagree. We therefore grant the government's motion to dismiss defendant's appeal as barred by the terms of his plea agreement.

## I.

Grundy was a high-ranking public official in Wayne County, Michigan, wearing a number of different hats. He was an Assistant County Executive; the Executive Director of HealthChoice, a municipal corporation chartered to promote the health and welfare of area residents; and the Division Director of the County's Patient Care Management System, which administered its programs through a company called ProCare Plus. According to the superseding indictment, he used those positions of power to perpetrate a kickback scheme that bilked HealthChoice and ProCare Plus out of over $1 million. The overarching conspiracy included three schemes, which the government labeled the HealthChoice-Medtrix Scheme, the HealthChoice-Advertise Me Scheme, and the ProCare Plus-Medtrix Scheme. In each, Grundy's long-time friend, Keith Griffin, would form businesses (Advertise Me and Medtrix) for the purposes of providing services (advertising and an electronic medical records program) to HealthChoice and ProCare Plus. At Grundy's direction, Griffin would inflate the price of his services and then "kickback" the excess to Grundy. According to the government, the benefit to Grundy associated with each scheme was: HealthChoice-Medtrix, $400,000; HealthChoice-Advertise Me, $631,766; and ProCare Plus-Medtrix, $350,000. The total: $1,381,766.

Defendant pleaded guilty to one count of honest services wire fraud arising from the HealthChoice-Medtrix scheme. *See* 18 U.S.C. §§ 1343 & 1346. As part of his plea agreement, he agreed to "waive[] any right he may have to appeal his sentence" if "the sentence imposed does not exceed the 210 month maximum allowed by Part 3 of th[e] agreement." The 210-month figure represented the top end of the Guidelines range proposed by the government. That range (168 to 210 months) was dictated in large part by the government's position that the loss associated with defendant's criminal conduct was between $1 million and $2.5 million. *See* U.S.S.G. §§ 2C1.1(b)(2), 2B1.1(b)(I). Defendant proposed a different Guidelines range (37 to 46 months) based, in large part, on his position that the loss amount was limited to $400,000, the amount associated with his offense of conviction. The agreement provided that

"[t]he Court shall order restitution to every identifiable victim of defendant's offenses" and that "[t]he Court will determine who the victims are and the amounts of restitution they are owed."

At sentencing, the district court accepted the government's proposed Guidelines calculation with the exception of a two-level adjustment not relevant here. The final Guidelines range was 135 to 168 months, from which the district court varied downward to impose a 90-month term of imprisonment. The district court deferred setting the restitution amount, directing the parties to try and reach an agreement on the final amount.

After negotiations broke down, the government filed a motion for restitution, which it later amended. It requested a total of $1,380,767 in restitution, representing the loss amount for all three schemes (HealthChoice-Medtrix, $400,000; HealthChoice-Advertise Me, $631,766; and ProCare Plus-Medtrix, $350,000). Defendant initially agreed that he was responsible for restitution relating to the HealthChoice-Advertise Me scheme, but changed course and argued that restitution should be capped at the amount associated with the offense of conviction, *i.e.*, $400,000. The district court resolved the conflict in the government's favor, ordering defendant to pay $1,380,767 in restitution.[1]

Defendant filed a notice of appeal. The government filed a motion to dismiss based on defendant's appeal waiver, which was referred to a motions panel of this court. However, "[g]iven the fact-specific inquiry necessary to determine whether the appellate-waiver provision is enforceable," we deferred decision on the government's motion until full briefing and preparation of the record. *United States v. Grundy*, No. 14-2287, at 2 (6th Cir. Jan. 21, 2015). Having received both, the appeal and motion are ripe for decision.

## II.

Our precedent is against defendant's position. In *United States v. Winans*, 748 F.3d 268 (6th Cir. 2014), the defendant pleaded guilty to one count of wire fraud under a plea agreement. That agreement contained an appeal waiver, which provided, "If the sentence imposed does not

---

[1]An attentive reader will have noticed there is a mathematical discrepancy between the restitution amounts for each scheme and the government's proposed sum—the total should be $1,381,766. Because the error inured to defendant's benefit and the government did not challenge it, we do not disturb the district court's final order adopting the government's proposed total restitution amount.

exceed the maximum allowed by Part 3 of this agreement, defendant also waives any right he may have to appeal his sentence." 748 F.3d at 270. Part 3 of the defendant's plea agreement calculated a Guidelines range of 151 to 188 months based on, among other things, a loss amount between $7 million and $20 million. *Id.* at 269. The plea agreement left the exact amount of restitution for the court to decide, stating that "[t]he Court shall order restitution to every identifiable victim of defendant's offense and all other relevant conduct. The victims, and the full amounts of restitution in this case, are to be determined." *Id.* at 270–71. The district court sentenced Winans to 165 months of incarceration, within the sentencing Guidelines range set out in the plea agreement, and ordered him to pay $4,796,522 in restitution. *Id.* at 269.

Despite his waiver, Winans appealed and challenged his restitution amount. On the government's motion, we dismissed Winans's appeal because it was barred by the express terms of his appeal waiver. *Id.* at 269. "[R]estitution," we said, "is a part of one's sentence." *Id.* at 271 (citation omitted). Thus, by waiving "any right he may have to appeal his sentence" if he received a sentence below 188 months (which he did), "the waiver extinguished Winans's right to appeal the restitution order." *Id.*

*Winans* controls this case. As in *Winans*, Grundy agreed to plead guilty and "waive any right he may have to appeal his sentence" if he was sentenced below the maximum of a specified range, in this case 210 months. Defendant received a sentence under the 210-month maximum. Under the terms of his plea agreement, then, defendant waived the right to appeal his sentence, which includes any obligation to pay restitution. *Id.*; *see also United States v. Gibney*, 519 F.3d 301, 306 (6th Cir. 2008) ("[R]estitution is a part of one's sentence under the statutory scheme[.]") (citation omitted). To quote *Winans*: "Because restitution is a part of [Grundy's] sentence, and [Grundy] waived 'any right he may have to appeal his sentence,' the waiver extinguished [Grundy's] right to appeal the restitution order." *Winans*, 748 F.3d at 271.

Defendant argues against this conclusion on three grounds.

First, he contends *Winans* is distinguishable. Unlike *Winans*, defendant contested the government's Guidelines and restitution calculation. *Cf. id.* at 269. Grundy argues this factual difference, coupled with the plea agreement's silence on how restitution would be calculated,

demonstrates he did not knowingly waive his right to appeal the amount of, or manner of calculating, restitution.

It is true Grundy disputed the government's Guidelines and loss amount calculations. But, what is important as it relates to his understanding of the appeal waiver (and *Winans*'s applicability) is that Grundy expressly tied his waiver to the district court's acceptance of the government's Guidelines calculation, which in turn was based on a loss amount of between $1 million and $2.5 million.  Thus, not only was Grundy on notice that the district court could sentence him based on a finding that he was responsible for over $1 million in losses, he expressly agreed not to appeal even if the court did so, as long as the final sentence did not exceed the high end of the government's proposed Guidelines range.  In this respect, this case is indistinguishable from *Winans*, in which the defendant agreed to waive his appeal rights if he was sentenced within a Guidelines range that was based on a particular loss amount range.  *Id.* at 271.  As in *Winans*, defendant cannot be heard to argue he did not know the potential restitution exposure since he based his appeal waiver on a Guidelines range that itself was explicitly based on a specific loss amount range.

Moreover, we disagree with Grundy's premise that disputing and reserving calculation of restitution shows that he understood it was not encompassed by an appeal waiver.  As we stated in *United States v. Curry*, "By reserving the right to challenge the amount of restitution in the district court, [the defendant] recognized that restitution would be part of his sentence, that the amount of restitution would be disputed and that he could have reserved (but did not reserve) the right to challenge the restitution order before the appellate court."  547 F. App'x 768, 771 (6th Cir. 2013).  That he expressly reserved the right to challenge restitution before the district court, but did not do so for appeal purposes, indicates that "exclusion of the latter was a deliberate choice."  *Id.*

Second, Grundy argues that the text of his plea agreement limits the appeal waiver to challenges to the term of incarceration.  "By tying the appeal waiver to the 210 month maximum," Grundy argues, "the plea agreement equates 'sentence' with 'sentence of imprisonment,'" leaving the other components of the judgment ripe for appeal.  Defendant is right to read the word "sentence" in context.  *United States v. Villareal*, 491 F.3d 605, 608 (6th

Cir. 2007) (plea agreements are subject to traditional principles of interpretation). But a contextual reading of the plea agreement reveals that "sentence" refers to the sum of the constituent parts of the judgment of sentence, not simply the term of incarceration. Defendant's plea agreement included a section called "Sentence" and that section included subheadings for "Imprisonment," "Supervised Release," "Special Assessment," "Fine," "Restitution," and "Forfeiture." This demonstrates that "sentence" refers to the overall judgment, which encompasses the various components like imprisonment and restitution. The text only confirms what our case law holds: by agreeing to waive his right to appeal his "sentence," defendant waived any challenges to each of the constituent elements of his sentence, including restitution.

Finally, Grundy asserts that his appeal waiver should not be enforced on policy grounds because it would "subject him[] to being sentenced entirely at the whim of the district court." Appellant's Br., p. 30, citing *United States v. Freeman*, 640 F.3d 180, 193–94 (6th Cir. 2011). But our notions of good policy cannot trump the plain text of the parties' agreement. Defendant expressly agreed to waive any right to appeal his sentence if he received a sentence of less than 210 months. The wisdom of the bargain struck is not for us to judge; our task is to enforce the terms of agreements freely and knowingly entered into. *See United States v. Beals*, 698 F.3d 248, 255 (6th Cir. 2012) (stating that if a defendant wished to preserve a particular challenge to her sentence, "she certainly could have bargained for it. We must give effect to the intent of the parties as expressed by the plain language in the plea agreement") (internal citation omitted). To the extent defendant relies on *Freeman* for the proposition that an appeal waiver does not bar restitution orders above the statutory maximum, we have previously rejected *Freeman*'s premise (that there is a statutory maximum for restitution) as conflicting with prior controlling precedent. *United States v. Churn*, 800 F.3d 768, 782 (6th Cir. 2015) ("*Freeman*'s statement does not alter our conclusion to the extent it conflicts with [*United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005)]."); *Sosebee*, 419 F.3d at 461 ("[T]he restitution statutes do not specify a statutory maximum.").

III.

We dismiss defendant's appeal as barred by the appeal waiver provision contained in the plea agreement.