NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0029n.06

Case No. 22-3279

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Jan 13, 2023 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| JOSHUA GLOWACKI, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Joshua Glowacki pleaded guilty to the receipt of visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). Prior to his plea, Glowacki filed a motion to suppress evidence obtained in a search of his home, or alternatively, for a *Franks* hearing. He now appeals from the district court's denial of his motion to suppress, arguing that the warrant to search his home was not supported by probable cause. Glowacki also challenges the district court's restitution order. Because we find that the warrant was supported by probable cause, or at least executed in good faith, we **AFFIRM** the district court's denial of Glowacki's motion to suppress, and **DISMISS** his restitution claims as waived by a valid plea agreement.

## I.    BACKGROUND

A.    <u>The Affidavit</u>

In March 2021, a magistrate judge in the Northern District of Ohio issued a warrant to search Glowacki's residence.  The warrant authorized law enforcement officers to search for evidence and fruits of violations of: 18 U.S.C. § 2251 (sexual exploitation of children); 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography); and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (knowing possession, access, conspiracy to access, or attempted access with intent to view child pornography).  The following facts are undisputed and come from FBI Special Agent Monica Hantz's affidavit in support of the search warrant.  At the time, Hantz had five years of experience in the FBI and had received training pertaining to child pornography and child exploitation.

In October 2020, the FBI served a subpoena on Coinbase, a cryptocurrency exchange platform, requesting records of bitcoin addresses associated with dark net sites that advertise Child Sexual Abuse Material (CSAM).  The affidavit describes the "dark net" as "a part of the deep web that not only cannot be discovered through a traditional search engine, but also has been intentionally hidden and is inaccessible through standard browsers and methods."  Dark net marketplaces on the dark net allow for vendors to sell illicit (and occasionally legal) goods.  The affidavit further explains that items purchased through dark net vendors are typically paid for in bitcoin—a virtual currency circulated over the internet.  Bitcoin addresses are case-sensitive strings of letters and numbers akin to bank account numbers, to and from which bitcoin can be sent.  Once agents received the information from Coinbase, they identified a bitcoin account registered to Glowacki as sending two bitcoin payments on December 24, 2019, to a bitcoin address ("BTC Address 1") associated with a dark net website (the "Target URL") that advertises

CSAM. The affidavit identified Glowacki as a registered sex offender in the state of Ohio who had pleaded guilty to charges of pandering sexually oriented matter involving a minor in May 2019.

Open searches for information associated with the BTC Address 1 revealed that it had previously been publicly reported on www.bitcoinabuse.com as follows: "TOR site advertising for child exploitation videos. Below is the ad US $ 15 – After payment to the bitcoin address number: 15WK91Jq47uFASfBGwvY6SSv6Vc7tEgZfJ write the transaction number write [sic] to e-mail: video-child@secmail.pro we will send you access." In February 2020, Internet Watch Foundation (IWF), a registered charity focused on "minimi[zing] the availability of online sexual abuse content, specifically [CSAM]," also identified BTC Address 1 as involved in "child abuse material." Using blockchain analysis, investigators determined that the BTC Address 1 had received 1.75 BTC (approximately $12,000), and all but 4% of the funds received in the wallet associated with BTC Address 1 were sent to a virtual currency exchanger based in Russia.

In October 2020, investigators visited the Target URL and found images and videos depicting prepubescent children engaged in sexual acts and an advertisement for "[a]ccess to 10 + terabytes of child porn private site." The affidavit disclosed that at the time of the investigators' review, the Target URL listed a different bitcoin address ("BTC Address 2") than the one utilized by Glowacki. The Target URL directed users to send bitcoin payment to BTC Address 2 and follow up with an email to child-video@secmail.pro containing the transaction ID for access. Notably, in addition to the child-video@secmail.pro address, the Target URL also directed users to video-child@secmail.pro – the same email address as the one included in the reported advertisement listing BTC Address 1 that Glowacki had used. IWF also identified BTC Address

2 as involved in "child abuse material." Further, BTC Address 2 was associated with the same Russian-based currency exchanger as BTC Address 1.

On the strength of the affidavit, a magistrate judge issued a warrant to search Glowacki's residence and any computer, computer media, and mobile computing device located therein, and to seize all evidence, fruits, and instrumentalities of the suspected crimes. During the resulting search, officers seized several electronic items, including Glowacki's cell phone, which contained images classified as child exploitation and possible child pornography.

B.      Procedural History

In April 2021, a federal grand jury returned a two-count indictment against Glowacki, charging him with the receipt of visual depictions of real minors engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(2) (Count 1), and possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B) (Count 2). Glowacki moved to suppress the evidence seized in the search of his home, or in the alternative, for a *Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). He argued that the search warrant was not supported by probable cause because the affidavit lacked conclusive evidence that he accessed, viewed, received, distributed, or produced any child pornography material from the Target URL.

The district court determined that the search warrant affidavit was supported by probable cause and that a *Franks* hearing was not warranted. Glowacki subsequently entered into a plea agreement with the government and, in accordance with its terms, pleaded guilty to Count 1. In the plea agreement, he broadly waived the right to appeal both his conviction and his sentence. However, the agreement specifically preserved his right to appeal the denial of his motion to suppress and for a *Franks* hearing, any punishment in excess of the statutory maximum or any sentence exceeding the maximum of the range determined under the Sentencing Guidelines, and

claims of ineffective assistance of counsel or prosecutorial misconduct. The agreement further stipulated that "[t]he Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release."

After Glowacki executed the plea agreement and entered his guilty plea, but before sentencing, a victim identified in one of the photographs that Glowacki possessed submitted a victim impact statement and a restitution request under the pseudonym "Lily." Pursuant to the Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, after determining the full amount of a victim's losses incurred or projected to be incurred as a proximate result of the offenses, district courts are required to order a defendant to pay a victim restitution in an amount reflecting the defendant's relative role in causing the victim's losses, but no less than $3,000. 18 U.S.C. § 2259(b), (c)(2). Lily identified her full economic losses to total $6,008,536.29, including medical costs, future counseling expenses, educational and vocational counseling needs, and lost past and future earnings. She requested restitution from Glowacki in the amount of $10,000.

At sentencing, Glowacki objected to the amount of the restitution request, arguing that there was insufficient evidence in terms of proximate cause to justify the $10,000 amount pursuant to *Paroline v. United States*, 572 U.S. 434, 449 (2014). Glowacki requested that the court impose only the minimum restitution of $3,000. The court overruled his objection and ordered Glowacki to pay Lily's requested $10,000 restitution. It further sentenced him to the statutory minimum of 15 years' imprisonment, followed by 15 years of supervised release. Glowacki now appeals both the district court's denial of his motion to suppress and the restitution order.

Because the search warrant was supported by probable cause, we **AFFIRM** the district court's denial of Glowacki's motion to suppress. We **DISMISS** his restitution claim as waived by his valid plea agreement.

## II.    DISCUSSION

### A.    Motion to Suppress

Glowacki argues that the warrant authorizing the search of his home was not supported by probable cause because the statement that he sent bitcoin to a bitcoin address associated with a child pornography site was not sufficient to support a reasonable inference that he possessed child pornography. He further claims that the affidavit's failure to state that he had viewed or downloaded child pornography or accessed a child pornography website was fatal to a finding of probable cause and good faith. The government maintains that the affidavit was sufficient alone to establish probable cause, and that even if it was not, the good faith exception should prevent suppression.

#### 1.    Standard of Review

The Fourth Amendment establishes that a search warrant may not issue without a finding of probable cause. U.S. Const. amend. IV. Probable cause exists where "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018) (quoting *Greene v. Reeves,* 80 F.3d 1101, 1106 (6th Cir. 1996)). A finding of probable cause does not require certainty or a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983). Rather, the task of the issuing magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that

6

contraband or evidence of a crime will be found in a particular place." *Id.* at 238. While our review of the district court's "logic" is *de novo*, our review of probable cause itself is more deferential. *See United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018). That is, "the court reviewing a warrant does not write on a blank slate. A judicial officer who issues a warrant 'should be paid great deference.'" *Id.* (quoting *Gates*, 462 U.S. at 236). On review, we are tasked only with ensuring that the magistrate had a "substantial basis for . . . concluding that probable cause existed" based on the "totality of the circumstances." *Gates*, 462 U.S. at 236, 238 (cleaned up). We will uphold the denial of a motion to suppress "if the district court's conclusion can be justified for any reason." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quoting *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)).

To deter police misconduct, the exclusionary rule bars the introduction of evidence obtained in violation of the Fourth Amendment. *Warden v. Hayden*, 387 U.S. 294, 304-05 (1967). But even if the magistrate judge did not have a substantial basis for finding probable cause, suppression is not appropriate where executing officers relied on the search warrant in good faith. *United States v. Leon*, 468 U.S. 897, 922-23 (1984) (establishing the good-faith exception to the exclusionary rule).

### 2. *Probable Cause*

In disputing probable cause, Glowacki faults the search warrant affidavit for failing to establish that: (1) the Target URL received the bitcoin he sent or gave him access to the site, (2) he subscribed or visited the Target URL, or (3) he downloaded, kept, or otherwise possessed material from the Target URL. The government counters that requiring such information would call for certainty in the probable cause analysis, where it has no place. As a practical matter, it is not necessary to individually rebut Glowacki's allegations of missing information since we judge

the adequacy of the affidavit based on "what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc).

We have previously held that evidence of a sex offender's subscription to a child pornography website, as demonstrated by payment through a financial account, combined with evidence tying the offender to the place(s) to be searched, was sufficient to support probable cause. *See United States v. Frechette*, 583 F.3d 374, 379-81 (6th Cir. 2009). The government argues that the circumstances here are sufficiently analogous to those in *Frechette* to support the same conclusion. In *Frechette*, we reversed the district court's suppression of evidence, finding sufficient probable cause to support the underlying search where the warrant affidavit definitively established that the defendant, a registered sex offender, paid $79.95, the exact amount required for a one-month subscription, to a commercial child pornography site using an email address and PayPal account connected to his name and residence. *Id.* at 377, 379-80. The *Frechette* court explained that "if someone spends $80 for something, it is highly likely that person will use it—whether it is a tie, a video game, or a subscription to a pornographic website." 583 F.3d at 380. The decision cited "the fact[s] that the defendant had viewed the splash page that contained pornographic images of children, set up an account with PayPal on the same day, and transferred the exact amount of funds needed from his debit card to the PayPal account to pay for the subscription" as making it "all the more likely he would access what he paid to view." *Id.* at 381.

The government also cites *United States v. Wagers* for the similar proposition that "evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." 452 F.3d 534, 540 (6th Cir. 2006). In *Wagers*, we found probable cause to support a

search warrant where records obtained from child pornography websites' billing services revealed that the defendant purchased subscriptions for one to two months of membership to multiple websites, in combination with his prior child pornography convictions. 452 F.3d at 536-37. The court relied on facts showing that the defendant subscribed to the offending sites to make the reasonable inference that he took additional, incriminating steps. *Id.* at 540; *see also United States v. Paull,* 551 F.3d 516, 519, 522-23 (6th Cir. 2009) (finding probable cause where affidavit detailed the defendant's subscriptions to websites advertising child pornography); *Tagg*, 886 F.3d at 584, 587-88 (finding that affidavit stating that defendant accessed child pornography website and clicked on over 160 hyperlinks advertising child pornography established probable cause despite not stating he viewed or accessed any illegal files).

Without question, the affidavit here contains less *direct* evidence. For instance, there is no direct evidence of a "subscription" to a child pornography website or reference to the specific amount that Glowacki paid to BTC Address 1. Instead, the affidavit lays out circumstantial evidence that requires inferences that Glowacki purchased access to, then accessed child pornography material. There is direct evidence that Glowacki was convicted of pandering sexually oriented material involving a minor; that he is a registered sex offender; that approximately seven months after his convictions, he submitted cryptocurrency payments via computer to a bitcoin address that has received about $12,000 using a virtual currency exchanger that does not respond to legal process; and that he was linked to the place to be searched. There is circumstantial evidence that BTC Address 1 to which he sent his payments was reported by a bitcoin abuse website as a "TOR site advertising for child exploitation videos" and provided instructions on how to access child pornography material; that a second internet safety organization separately identified BTC Address 1 as an address involving child abuse material; that BTC Address 1 is

9

associated with a URL on the dark net, which, when visited by investigators, revealed over a dozen images depicting apparent child pornography material; and that based on information from the aforementioned bitcoin abuse website, the URL provided the same email contact information that was in a dark net advertisement that listed BTC Address 1, to which Glowacki sent his payment.

The district court found that the totality of circumstances set forth in the affidavit supported the magistrate judge's probable cause finding, and we do too. We have previously described the "dark web"[1] as "a sophisticated, anonymous internet network used both by criminals and by other individuals who, for whatever reason, do not want to be identified." *Tagg*, 886 F.3d at 582. As noted in the search warrant affidavit, cryptocurrency, which allows for the anonymous exchange of currency, is the preferred method of payment. *Frechette*, *Wagers*, and *Paull* each involved conduct that occurred over twelve years ago, a time when cryptocurrency was in its infancy and few had heard of dark net marketplaces. Thus, it is not so surprising that the evidence set forth in those cases included direct evidence of child pornography subscriptions. Since then, the internet has evolved, leaving many transactions either partially or totally untraceable. But the reasoning in *Wagers* and *Frechette* that "evidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material" remains apt here. *Wagers*, 452 F.3d at 540; *see also Frechette*, 583 F.3d at 379. While the evidence of Glowacki's payment for access is less direct than the evidence of subscriptions in the noted decisions, it has probative value. And to the extent that Glowacki seeks to distinguish his situation based on the absence of a "subscription" in the

---

[1] The terms "dark net" and "dark web" may be used interchangeably. *See, e.g.*, *United States v. Sterlingov*, 573 F. Supp. 3d 28, 31 (D.D.C. 2021) (using the terms "darknet" and "dark web" interchangeably; Dep't of Just., Commentary to Manual § [9-100.000A] (2018) (same); Dep't of Just., Off. of Pub. Affs., Press Release: AlphaBay, the Largest Online 'Dark Market,' Shut Down (July 20, 2017) (same), available at https://www.justice.gov/opa/pr/alphabay-largest-online-dark-market-shut-down.

traditional sense,[2] his efforts are unavailing.  The advertisements associated with the Target URL did not specify how long a user would maintain access after payment.  But even if Glowacki's payments were for one-time access rather than for a period of ongoing or recurring access as denoted by a subscription, that distinction is of no moment, because the salient point of *Frechette*, *Wagers*, and *Paull* is that once access is granted, the purchaser is likely to claim (*i.e.* come into possession of) what was purchased, and Glowacki concedes that staleness is no issue here.

Likewise, Glowacki's assertion that BTC Address 1 was associated with two other pornography websites does not advance his cause.  As the district court pointed out, these additional sites were *also* marked as containing child pornography—an unhelpful fact for Glowacki to highlight.  But even if BTC Address 1 *could* have been associated with legal purposes, that argument has little traction as we have made clear that "probable cause 'does not require officers to rule out a suspect's innocent explanation for suspicious facts.'"  *Tagg*, 886 F.3d at 586 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)).  That is, we do not assess "whether particular conduct is 'innocent' or 'guilty,'" but rather "the degree of suspicion that attaches to particular types of noncriminal acts."  *Wesby*, 138 S. Ct. at 588 (quoting *Gates*, 462 U.S. at 244 n.13).  To the extent that BTC Address 1 might have been associated with alternative, innocent websites or services, Glowacki's prior criminal history involving child pornography was properly considered in evaluating an already suspicious exchange.  *Wagers*, 452 F.3d at 541 ("[A] 'person of reasonable caution' would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause.") (internal quotations and citations omitted);

---

[2] Merriam-Webster defines "subscription" as "an arrangement for providing, receiving, or making use of something of a continuing or periodic nature especially on a prepayment plan: such as a purchase by prepayment for a certain number of regular deliveries of something (such as issues of a periodical) or for a certain period of access to or use of something (such as an online service)." *Subscription*, Merriam-Webster, https://www.merriam-webster.com/dictionary/subscription (last visited January 2, 2023).

*see* R. 37-3 ¶ 23 (Glowacki previously pleaded guilty to pandering sexually oriented matter involving a minor). Having submitted his payment, and considering the connection between the payment address and the illicit URL identified in the search warrant affidavit, it was reasonable to conclude that he likely received what he paid for – child pornography materials. The parts of the transaction that may have been lost to the secrecy and protection of the dark net do not undermine this finding.

### 3. Good Faith Exception

Even if we were to conclude that the affidavit fell short, suppression would not be warranted here because the agents acted in good faith in executing the warrant. The Supreme Court in *United States v. Leon* held that the exclusionary rule will not apply even where a warrant is later deemed invalid if the search was executed by officers acting in "objectively reasonable reliance" on a warrant issued by a detached and neutral magistrate. 468 U.S. at 922. But *Leon* outlined four exceptions where suppression is still appropriate: when (1) the magistrate judge was misled by information in the affidavit and the affiant knew the information was false or recklessly disregarded the truth; (2) the magistrate judge abandoned their detached neutral role; (3) the warrant was so lacking in any indicia of probable cause that official belief in its existence is unreasonable; or (4) the warrant was so facially deficient that it could not reasonably be presumed valid. *Id.* at 923. Glowacki asserts that the third exception applies here. Under this exception, we inquire whether a "reasonably well trained officer" would have "no reasonable grounds for believing that the warrant was properly issued." *Id.* Affidavits falling within this exception have come to be known as "bare-bones affidavits," *i.e.*, ones which "contain[] only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005)

(quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)).  Stated otherwise, a bare-bones affidavit is a conclusory affidavit that "states only the affiant's belief that probable cause existed."  *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993) (cleaned up).

Glowacki contends that "[n]o reasonable officer could rely on the affidavit here because of the missing links—no subscription to the illicit website, no visiting the site, no downloading from the site."  Appellant's Br. at 12-13.  He cites only our decisions in *Paull* and *Wagers* as instances in which we have required more to uphold a search warrant.  But those cases do not offer persuasive evidence in the context of a good-faith analysis; both cases concerned findings of probable cause.  The standard required for a finding of good faith is less demanding than that of probable cause.  *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc) ("If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance."); *see also United States v. Brown*, 828 F.3d 375, 385-86 (6th Cir. 2016) ("Although the good-faith standard is less demanding than the standard for probable cause, the affidavit still must draw some plausible connection to the residence.").  The facts presented in the affidavit here—the affiant's training and experience, the nature of the dark net and cryptocurrency, Glowacki's recent prior conviction and status as a sex offender, and his payment to a bitcoin address listed in an advertisement for access to child exploitation videos on the dark net—were not "so vague as to be conclusory or meaningless."  *Carpenter,* 360 F.3d at 596.

As such, the affidavit here fits comfortably within the good faith exception, and would still preclude the suppression of evidence obtained during execution of the search warrant.

B.      Restitution

Glowacki next claims that the district court's imposition of $10,000 in restitution was improper.  The government submits that, as a threshold matter, Glowacki waived any challenge to his restitution claim in the valid appellate waiver within his plea agreement.  We agree.

This court reviews *de novo* the question of whether a defendant waived his right to appeal his sentence in a valid plea agreement.  *United States v. Stubbs*, 279 F.3d 402, 411 (6th Cir. 2002).  "[A] defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement."  *United States v. Winans*, 748 F.3d 268, 270 (6th Cir. 2014) (alteration in original) (quoting *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)).  "In deciding the scope of the appellate waiver, we use ordinary contract law principles and construe any ambiguities against the government."  *United States v. Fowler*, 956 F.3d 431, 436 (6th Cir. 2020) (citing *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011)).  A valid waiver must be both knowing and voluntary.  *Winans*, 748 F.3d at 270 (citing *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001)).  In arguing that this court should reach the merits of his restitution claim, Glowacki asserts that his appeal of the restitution order is outside of the scope of his waiver and that his agreement to waive claims regarding restitution was not knowing.

1.      *Scope of Waiver*

The threshold question is whether Glowacki's restitution claim on appeal was contemplated by his plea agreement.  *See Fowler*, 956 F.3d at 436.  The substance of his claim on appeal is that (1) the district court did not appropriately assess his role in causing Lily's losses, and (2) the determination was only appropriate for a jury.

Under the terms of Glowacki's plea agreement, he broadly waived his right to challenge his conviction or sentence on appeal.  The agreement expressly states that Glowacki was advised

by counsel of his rights to appeal the conviction or sentence in his case, including the appeal rights conferred by 18 U.S.C. § 3742. In relevant part, the law provides that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence" if that sentence:

(1) was imposed in violation of law;
(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3472(a). Glowacki "expressly and voluntarily waive[d] those rights," preserving only the right to appeal (1) the district court's denial of his motion to suppress or for a *Franks* hearing; (2) any punishment in the excess of the statutory maximum or any sentence to the extent it exceeds the maximum of the range determined by the Sentencing Guidelines; and (3) claims of ineffective assistance of counsel or prosecutorial misconduct. In a section outlining maximum penalties and consequences of pleading guilty, the agreement specified that "[t]he Court may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release."

It is undisputed that "restitution is a part of [a defendant's] sentence." *Winans*, 748 F.3d at 271. And "we have repeatedly read a waiver of the right to appeal a sentence as including a restitution order." *United States. v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021) (collecting cases). In *Riccardi*, this court held that a defendant's waiver of the right to appeal her conviction and sentence foreclosed a challenge to the court's calculation of restitution. *Id.* As here, the *Riccardi* waiver broadly covered the right to appeal any sentence, with only specific narrow exceptions, including (1) sentences exceeding the maximum recommended under the Sentencing Guidelines,

or (2) in excess of the statutory maximum. 989 F.3d at 489-90. We explained that restitution did not fall within the first waiver exception because "restitution is not 'imprisonment,'" and "the guidelines do not provide restitution 'ranges.'" *Id.* at 490 (quoting *United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006)). As to the second exception, we emphasized that it is well established in this circuit that restitution does not affect any statutory maximum penalty. *Id.* (quoting *United States v. Bradley*, 969 F.3d 585, 591-92 (6th Cir. 2020)); *United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005); *Sharp*, 442 F.3d at 952.

Because restitution is a part of a sentence and is not contemplated within the Sentencing Guidelines or implicated in statutory maximum penalties, Glowacki's restitution claim fell within the scope of his broad waiver.

### 2. *Knowing Waiver*

Glowacki argues, alternatively, that because the agreement failed to include a range of restitution, he was not aware of the attendant consequences, making his waiver unknowing and its enforcement unfair. An appellate waiver "is effective only if understood by the defendant." *Sharp*, 442 F.3d at 949. We evaluate the knowing and voluntary nature of a waiver within a plea agreement "by examining the district court record, particularly the written plea agreement and the colloquy at the change of plea hearing." *United States v. Ferguson*, 669 F.3d 756, 765 (6th Cir. 2012).

The agreement here clearly contemplated the court's order of restitution as a consequence of pleading guilty. Glowacki does not contend that the applicable language was capable of any alternative interpretation. The fact that a range was not specified does not render the terms any less clear, and if Glowacki wished to reserve his right to appeal the restitution order, he was free to negotiate those terms prior to entering the agreement. *See United States v. Rafidi*, 730 F. App'x

338, 342 (6th Cir. 2018). Moreover, "[t]he wisdom of the bargain struck is not for us to judge; our task is to enforce the terms of agreements freely and knowingly entered into." *United States v. Grundy*, 844 F.3d 613, 617 (6th Cir. 2016) (rejecting defendant's argument that "his appeal waiver should not be enforced on policy grounds because it would 'subject him[] to being sentenced entirely at the whim of the district court.'").

Glowacki's agreement laid out the narrow circumstances permitting appeal. He initialed each page of the agreement. At the plea colloquy the court walked through the agreement by paragraph and reiterated to Glowacki that "there may be restitution depending on the victims. If there [are] any victims identified who are pictured in any images you may have viewed, then restitution may be ordered by the Court." Glowacki confirmed that he understood. The court then explained that under the agreement, Glowacki was waiving his right to appeal or challenge his sentence of conviction in any way and listed each of the stipulated exceptions to that waiver. Glowacki again confirmed his understanding. Throughout the colloquy, the court asked Glowacki if he had any questions. He had none. The district court thus found Glowacki fully competent and capable of entering an informed plea, and that his plea was knowing and voluntary. We agree and hold that Glowacki's waiver in his plea agreement is valid and enforceable, and therefore bars consideration of the district court's restitution order.

## III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's denial of Glowacki's motion to suppress and **DISMISS** his challenge to the restitution order.